# THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IBIO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2017-0790-TMR |
| | ) | |
| FRAUNHOFER-GESELLSCHAFT | ) | |
| ZUR FÖRDERUNG DER | ) | |
| ANGEWANDTEN FORSCHUNG | ) | |
| E.V., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted:  October 9, 2018
Date Decided:  December 10, 2018

David E. Ross and Eric D. Selden, ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware; Reed S. Oslan, Mark Premo-Hopkins, Britt Cramer, and Allison McDonald, KIRKLAND & ELLIS LLP, Chicago, Illinois; Inbal Hasbani and Kyla Jackson, KIRKLAND & ELLIS LLP, New York, New York; *Attorneys for Plaintiff.*

M. Duncan Grant, Christopher B. Chuff, James H. S. Levine, and Ellis E. Herington, PEPPER HAMILTON LLP, Wilmington, Delaware; *Attorneys for Defendant.*

**MONTGOMERY-REEVES, Vice Chancellor.**

Two companies, a Delaware biotechnology corporation and the wholly owned subsidiary of a German applied research company, entered into multiple agreements to develop plant-based technology for biopharmaceuticals. Plaintiff, the Delaware corporation, contends that it owns all rights to any technology the subsidiary developed for Plaintiff, including the right of exclusive ownership. The subsidiary allegedly breached the agreements when it misappropriated and refused to transfer the technology to Plaintiff, and Plaintiff has asserted related claims against the subsidiary in separate litigation.

Here, Plaintiff is suing the German parent company because, Plaintiff claims, the parent company had knowledge of and was involved in the subsidiary's breaches of the agreements. Defendant moves to dismiss this matter, arguing that this Court lacks jurisdiction over it, that Plaintiff failed to timely file its claims, and that Plaintiff fails to state any claim upon which relief can be granted.

I conclude that this Court has personal jurisdiction over Defendant but Plaintiff failed to timely file this matter. I, therefore, grant Defendant's motion to dismiss.

## I. BACKGROUND

For purposes of the Motion to Dismiss, I draw all facts from Plaintiff's Verified Complaint (the "Complaint"), the documents incorporated by reference therein, and affidavits submitted by the parties.[1]

Plaintiff iBio, Inc. ("iBio") is a Delaware corporation with its principal place of business in Newark, Delaware.[2] iBio is a biotechnology company that "focuse[s] on using its proprietary technologies and production facilities to provide product development and manufacturing services to others, as well as to develop and commercialize its own [products]."[3]

Defendant Fraunhofer-Gesellschaft zur Förderung der Angewandten Forschung E.V. ("FhG") is a not-for-profit company organized and existing under the laws of the Federal Republic of Germany with its principal place of business in Munich, Germany.[4] FhG is one of the largest and most successful applied research

---

[1] On a motion to dismiss, "the Complaint's allegations are assumed to be true, and the plaintiff receives the benefit of all reasonable inferences." *Virtus Capital L.P. v. Eastman Chem. Co.*, 2015 WL 580553, at *1 (Del. Ch. Feb. 11, 2015). To evaluate whether the Court can exercise personal jurisdiction over the defendants, "the [C]ourt may go beyond the pleadings and look to affidavits and other discovery of record." *Id.* (quoting *Chandler v. Ciccoricco*, 2003 WL 21040185, at *8 (Del. Ch. May 5, 2003)).

[2] Compl. ¶ 1.

[3] *Id.*

[4] *Id.* ¶ 2.

3

organizations in Europe and the world.[5] Non-party Fraunhofer USA, Inc. ("FUSA") is a Rhode Island corporation with its principal place of business in Plymouth, Michigan.[6] FUSA is a wholly owned subsidiary of FhG.[7]

iBio entered into several agreements with FUSA starting in 2003 to develop plant-based technology for the manufacture of biopharmaceuticals and other products.[8] Under the terms of the agreements, iBio exclusively owns the technology FUSA developed under these agreements.[9] iBio claims that FUSA misappropriated the technology for its own benefit and refused to transfer the technology to iBio.[10] iBio brought separate actions related to FUSA's alleged misappropriation of the technology. Initially, iBio sued PlantForm Corporation ("PlantForm"), a competitor, on October 17, 2014, to prevent PlantForm's use of iBio technology that FUSA had improperly disclosed to PlantForm.[11] Next, on March 17, 2015, iBio

---

[5]     *Id.* ¶ 3.

[6]     Bullinger Aff. ¶ 20.

[7]     Compl. ¶ 6.

[8]     *Id.* ¶¶ 12, 16, 42.

[9]     *Id.* ¶¶ 12, 42.

[10]    *Id.* ¶ 41.

[11]    *Id.* ¶ 88.

4

filed an action against FUSA alleging that FUSA breached its contracts with iBio.[12]

Now, in this action against FhG, filed on November 3, 2017, iBio contends that (1) FhG, as the parent corporation of FUSA, had a principal–agent relationship with FUSA and directed FUSA to breach the agreements with iBio and (2) FhG conspired with FUSA to breach the agreements.[13]

## II.    ANALYSIS

FhG moves to dismiss this matter, arguing that this Court lacks personal jurisdiction over it, that iBio failed to timely file its claims, and that iBio fails to state any claim upon which relief can be granted.

I conclude that this Court has personal jurisdiction over FhG but iBio failed to timely file this action.

### A.    Personal Jurisdiction

"When a defendant moves to dismiss a complaint pursuant to Court of Chancery Rule 12(b)(2), the plaintiff bears the burden of showing a basis for the [C]ourt's exercise of jurisdiction over the defendant."[14]

---

[12]    Verified Complaint ¶ 3, *iBio, Inc. v. Fraunhofer USA, Inc.*, C.A. No. 10801-VCP (Del. Ch. Mar. 17, 2015).

[13]    Compl. ¶¶ 9-10, 98, 129.

[14]    *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007).

5

Courts may exercise general or specific jurisdiction over a defendant. State courts exercise general jurisdiction over a defendant corporation when the corporation is incorporated in or has its principal place of business in that state.[15] The parties agree that this Court lacks general jurisdiction over FhG.[16]

When a party is not subject to general jurisdiction, Delaware courts apply a two-step analysis to determine whether the exercise of specific personal jurisdiction over a nonresident is appropriate. "First, we must consider whether Delaware's long arm statute [applies], recognizing that 10 *Del. C.* § 3104(c) is to be broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause" of the Fourteenth Amendment of the United States Constitution.[17] Delaware law recognizes alternative theories to satisfy the requirements of the long-arm statute, including theories of agency and conspiracy.[18] Second, "the [C]ourt must determine whether subjecting the nonresident defendant to jurisdiction in Delaware violates the

---

[15] *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 135 (Del. 2016).

[16] Def.'s Opening Br. 14-15; *see* Pl.'s Answering Br. 15.

[17] *Hercules Inc. v. Leu Tr. & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480-81 (Del. 1992) (citing *LaNuova D & B, S.p.A. v. Bowe Co., Inc.*, 513 A.2d 764, 768 (Del. 1986)).

[18] *Konstantino v. AngioScore, Inc.*, 2015 WL 5770582, at *6 (Del. Ch. Oct. 2, 2015, revised Oct. 9, 2015); *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *10 (Del. Ch. July 14, 2008).

6

Due Process Clause."[19] "If, as here, no evidentiary hearing has been held, plaintiffs need only make a prima facie showing of personal jurisdiction and 'the record is construed in the light most favorable to the plaintiff.'"[20]

iBio asserts that FhG's conduct falls under Section 3104(c)(1) and (c)(3) of Delaware's long-arm statute[21] under two legal theories: conspiracy theory of jurisdiction and agency theory of jurisdiction.[22] iBio claims that FUSA, as FhG's co-conspirator and agent, (1) transacted business and performed work in Delaware that caused iBio's injury and (2) caused tortious injury in Delaware by defrauding iBio and misappropriating its trade secrets.[23]

To subject a conspirator to this Court's jurisdiction, iBio must make a prima facie showing of the five-element test adopted by the Supreme Court of Delaware in *Istituto Bancario Italiano SpA v. Hunter Engineering Co.*:

---

[19] *Hercules*, 611 A.2d at 481.

[20] *Ryan*, 935 A.2d at 265 (quoting *Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at *3 (Del. Ch. Mar. 31, 2003)) (citing *Benerofe v. Cha*, 1996 WL 535405, at *3 (Del. Ch. Sept. 12, 1996)).

[21] 10 *Del. C.* § 3104(c) ("As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent: (1) Transacts any business or performs any character of work or service in the State; . . . (3) Causes tortious injury in the State by an act or omission in this State . . . .").

[22] Pl.'s Answering Br. 15-33.

[23] Compl. ¶ 10; *see id.* ¶¶ 12, 19, 23-24, 54-56.

7

(1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.[24]

"[T]he five elements of the *Istituto Bancario* test functionally encompass both prongs of the jurisdictional test. The first three . . . elements address the statutory prong of the test. The fourth and fifth . . . elements address the constitutional prong of the test."[25]

To determine the existence of a conspiracy, the first *Istituto Bancario* element, this Court uses another five-element test: there must be "(1) two or more persons; (2) some object to be accomplished; (3) a meeting of the minds between or among such persons relating to the object or a course of action; (4) one or more unlawful acts; and (5) resulting proximate damages."[26] FhG argues that iBio's allegations do not state the existence of a conspiracy.[27]

---

[24]   449 A.2d 210, 225 (Del. 1982).

[25]   *Virtus Capital*, 2015 WL 580553, at *12.

[26]   *Hartsel v. Vanguard Gp., Inc.*, 2011 WL 2421003, at *10 (Del. Ch. June 15, 2011).

[27]   Def.'s Reply Br. 10.

8

iBio alleges in its Complaint that representatives of both FhG and FUSA repeatedly and consistently represented to iBio that FUSA understood iBio's exclusive ownership of the technology.[28] FhG approved the agreements FUSA entered into with iBio and, thus, was aware of the contents of these agreements.[29] Representatives of FhG and FUSA also represented to iBio that FhG intended to ensure FUSA's respect for iBio's ownership rights.[30] iBio relied on FhG and FUSA's representations that the Delaware division of FUSA would transfer the technology to iBio.[31] Despite these representations and in breach of FUSA's contractual obligations, FUSA withheld transfer of the technology to iBio, and FhG explicitly approved this conduct, notwithstanding FhG's prior approval of iBio's exclusive ownership.[32] FUSA also allegedly disclosed iBio's technology to third parties without iBio's consent.[33] FhG approved the agreements between FUSA and the third parties that required the unlawful disclosure.[34] Further, senior management

---

[28]  Compl. ¶¶ 20, 59.

[29]  *Id.* ¶ 42.

[30]  *Id.* ¶ 59.

[31]  *Id.* ¶¶ 59-60.

[32]  *Id.* ¶¶ 16, 20, 42, 98.

[33]  *Id.* ¶¶ 86, 114-18.

[34]  *Id.* ¶ 111.

9

of FhG informed iBio that no resolution of iBio's dispute with FUSA can proceed without FhG's approval.[35] These allegations imply a plan between FhG and FUSA to misappropriate technology properly belonging to iBio. iBio sufficiently shows the five elements required for the existence of a conspiracy.

FhG fails to address the remaining *Istituto Bancario* elements in its briefs, stating only that if iBio fails to allege the existence of a conspiracy, then inquiry into the remaining four elements is moot.[36] Nonetheless, iBio's allegations support a prima facie showing of these four elements.

By alleging that FhG had a role in FUSA's withholding of technology from iBio, a corporation with its principal place of business in Delaware, iBio makes a prima facie showing that FhG was a member of the conspiracy and that a substantial effect in furtherance of the conspiracy occurred in Delaware. Plaintiff, thus, satisfies the second and third *Istituto Bancario* elements.

The final two elements evaluate whether "the defendant knew or had reason to know of the act [or effect] in the forum state" and whether the act or effect "was a direct and foreseeable result of the conduct in furtherance of the conspiracy."[37] Several of iBio's allegations are relevant to these elements. First, FhG approved the

---

[35]     *Id.* ¶ 87.

[36]     Def.'s Opening Br. 33; *see also* Def.'s Reply Br. 10.

[37]     *Istituto Bancario*, 449 A.2d at 225.

10

agreements between iBio and FUSA.[38]  Second, FhG explicitly approved FUSA's

refusal to transfer the technology to iBio, a corporation with its principal place of

business in Delaware.[39]  Third, FhG approved agreements between FUSA and third

parties that required FUSA to misappropriate or improperly disclose iBio's

technology.  Fourth and finally, senior management from FhG met with iBio and

made it "clear that FhG would need to approve any resolution regarding iBio's

concerns over [FUSA]'s use of iBio's technology."[40]  These allegations show that

FhG knew of (1) the dispute between FUSA and iBio and (2) the act, FUSA's

withholding of technology from iBio, giving rise to that dispute.  Because a central

purpose of the alleged conspiracy was to misappropriate technology properly

belonging to iBio, the withholding of technology was a direct and foreseeable result

of the conduct in furtherance of the conspiracy.

 For the reasons explained above, I conclude that iBio has made a prima facie

showing that all of the *Istituto Bancario* elements are met and, thus, that this Court

has personal jurisdiction over FhG under the conspiracy theory of jurisdiction.[41]

---

[38]   Compl. ¶ 42.

[39]   *Id.* ¶ 98.

[40]   *Id.* ¶ 87.

[41]   I need not address iBio's agency theory of personal jurisdiction.

11

## B.    The Doctrine of Laches

Having determined that this Court has personal jurisdiction over FhG, I must next consider whether iBio's claims are barred under the doctrine of laches. The doctrine of laches "is rooted in the maxim that equity aids the vigilant, not those who slumber on their rights."[42]

> Statutes of limitations exist at law and serve to bar claims brought after the limitations period set forth in the statute has expired. Statutes of limitations traditionally do not apply directly to actions in equity, although courts of equity may apply them by analogy in determining whether a plaintiff should be time-barred under the equitable doctrine of laches.[43]

"[T]he Court . . . afford[s] significant weight to an analogous statute of limitations when one exists and will presumptively bar an action filed after the limitations period, absent tolling or unusual circumstances that would make it inequitable to do so."[44]

The parties agree that the analogous statute of limitations for Plaintiff's claims is three years.[45] They dispute, however, whether the three years have passed. iBio

---

[42]  *Whittington v. Dragon Gp., L.L.C.*, 991 A.2d 1, 8 (Del. 2009) (quoting *Adams v. Jankouskas*, 452 A.2d 148, 157 (Del. 1982)).

[43]  *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 974-75 (Del. Ch. 2016).

[44]  *Id.* at 978.

[45]  Def.'s Opening Br. 36; Pl.'s Answering Br. 36.

12

argues that the statute of limitations should be tolled because FhG fraudulently concealed its involvement in the alleged breaches of contract.[46] FhG contends that iBio had, at a minimum, inquiry notice of its claims against FhG by no later than June 2014, thus barring iBio's claims in June 2017.[47]

The statute of limitations may be tolled for claims "where the facts underlying a claim were so hidden that a reasonable plaintiff could not timely discover them."[48] "[T]he limitations period begins to run when the plaintiff is objectively aware of the facts giving rise to the wrong, *i.e.*, on inquiry notice."[49] When a party has "facts sufficient to make him suspicious, or that ought to make him suspicious," the party is on inquiry notice.[50]

iBio's Complaint reveals that iBio had either actual knowledge or was on inquiry notice of its claims more than three years before it filed the present action. iBio alleges facts in its Complaint showing knowledge of its dispute with FUSA and FhG's role in that dispute no later than October 2014. First, the Complaint shows

---

[46]     Pl.'s Answering Br. 36-41.

[47]     Def.'s Opening Br. 38-39.

[48]     *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *5 (Del. Ch. July 17, 1998).

[49]     *Id.* at *6 (emphasis omitted).

[50]     *Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*, 2010 WL 363845, at *7 (Del. Ch. Jan. 27, 2010) (quoting *Dean Witter*, 1998 WL 442456, at *7 n.49).

that iBio learned of FUSA's breaches of the agreements in summer 2014. For example, "[i]n the summer of 2014, [FUSA] disclosed that, in breach of its agreements with iBio, it had entered into a secret agreement to use iBio's technology to develop plant-made pharmaceuticals for PlantForm Corporation . . . ."[51] Additionally, "[i]n early summer 2014, iBio learned that [FUSA] was working on an Ebola project with the government and asked for information about that project."[52] "The work being provided by [FUSA] [for that project] calls for use of iBio's technology."[53]

Second, the complaint iBio filed in its action against Plantform shows that iBio knew of its dispute with FUSA before October 17, 2014.[54] In fact, iBio alleged in the October 2014 action that the Delaware division of FUSA collaborated with PlantForm, causing the division of FUSA to "breach its contractual agreement to develop exclusively for and transfer [the technology] to iBio."[55]

---

[51]    Compl. ¶ 77.

[52]    *Id.* ¶ 100.

[53]    *Id.* ¶ 107.

[54]    *See generally* Verified Complaint, *iBio, Inc. v. PlantForm Corp.*, C.A. No. 10256-VCMR (Del. Ch. Oct. 17, 2014).

[55]    *Id.* ¶¶ 41-42 ("By inducing or allowing CMB to collaborate with PlantForm's joint venture to develop biopharmaceuticals using plant-based technology, PlantForm and Stewart have caused CMB to breach its contractual agreement to develop exclusively for and transfer to iBio all Technology and Improvements and has

14

Third, iBio argues that it had neither actual knowledge nor inquiry notice of FUSA's deceit until November 6, 2014, when FUSA's outside counsel sent an email and memorandum to iBio. In the memorandum, FUSA states that "[i]t was never [FUSA's] intention to, and [FUSA] never did, convey to iBio . . . all of its trade secrets, other technological know-how, and/or unspecified inventions in the field of plant biology . . . ."[56] According to iBio, that statement is the first fact in its possession confirming any wrongdoing by FUSA.[57] Prior to that date, "to the extent iBio was suspicious of any misconduct, FhG deliberately and fraudulently concealed its wrongdoing."[58]

iBio's argument fails because the email and memorandum, read in their entirety, contradict iBio's argument. The memorandum references an "ongoing disagreement" between FUSA and iBio.[59] The email clearly indicates previous communications: "both sides have thoroughly explained their respective

---

caused CMB to disclose iBio's proprietary and confidential information, thus causing CMT [*sic*] to breach the [agreements].").

[56] Verified Supplemental and Second Amended Complaint of iBio, Inc. Ex. P, at P2, *iBio, Inc. v. Fraunhofer USA, Inc.*, C.A. No. 10256-VCMR (Del. Ch. Feb. 27, 2017) [hereinafter Second Am. FUSA Compl.].

[57] *See* Pl.'s Answering Br. 38-39.

[58] *Id.* at 39.

[59] Second Am. FUSA Compl., *supra* note 56, Ex. P, at P2.

15

positions . . . , so there should be no need to review those positions . . . at the beginning of the meeting"; "You [Robert Kay, iBio's CEO] mentioned in a recent phone conf[erence] that iBio would provide to us a detailed analysis of its interpretation of the scope of its rights . . . ."[60] The email and memorandum indicate that iBio was, at a minimum, on inquiry notice of its claims against FUSA before November 6, 2014.

Fourth and finally, iBio alleges a conspiracy between FhG and FUSA and explicitly includes evidence of this conspiracy dating back to 2003.[61] iBio knew of FhG's relationship to FUSA in connection with agreements between FUSA and iBio, as well as agreements between FUSA and third parties like Plantform. iBio was aware that FhG "reviewed and approved all significant contracts of FUSA."[62] For example, FhG reviewed and approved the significant agreements between iBio and FUSA, including agreements before 2014.[63] FhG also approved significant agreements related to FUSA's collaboration with Plantform in June 2014.[64] iBio,

---

[60]     *Id.* at P1.

[61]     Compl. ¶¶ 12, 44, 55.

[62]     *Id.* ¶ 6; *see id.* ¶ 111.

[63]     *See id.* ¶¶ 12, 16.

[64]     *Id.* ¶ 6; Verified Complaint ¶ 37, *iBio, Inc. v. PlantForm Corp.*, C.A. No. 10256-VCMR (Del. Ch. Oct. 17, 2014).

16

knowing that FhG approved FUSA's significant agreements, was on inquiry notice of FhG's role regarding any significant agreements between FUSA and Plantform.

iBio's allegations that FhG supported and backed the relationship between the division of FUSA and iBio also supports the existence of a conspiracy between FhG and FUSA. FhG's support was "critical to iBio's continuing to enter into and perform contracts with [the division of FUSA]."[65] Additionally, iBio alleges that Dr. Yusibov, the Executive Director of the Delaware division of FUSA, "made clear to iBio that [the Delaware division] was integrated with and controlled by [FhG]."[66] Finally, in October 2014, iBio met with FhG's senior management to resolve iBio's dispute with FUSA.[67] These allegations further show that iBio was on inquiry notice of the conspiracy between FhG and FUSA.

iBio's Complaint shows that although iBio may not have known the full extent of (1) FUSA's breaches of its contracts with iBio or (2) FhG's involvement in the breaches, iBio had at least inquiry notice that FhG had a role in FUSA's breaches. "Inquiry notice does not require actual discovery of the reason for the injury. Nor does it require plaintiff['s] awareness of all of the aspects of the alleged wrongful

---

[65]     Compl. ¶¶ 19-20.

[66]     *Id.* ¶ 54.

[67]     *Id.* ¶ 87.

conduct. Rather, the [analogous] statute of limitations begins to run when [the] plaintiff[] should have discovered [its claims]."[68]

Therefore, iBio's allegations regarding FUSA's breaches of its contracts with iBio and the relationship between FhG and FUSA reveal that iBio was on inquiry notice likely in summer 2014, but, at the latest, in October 2014. iBio, however, did not file its Complaint until November 3, 2017, after the analogous statute of limitations expired. Thus, its claims are barred by laches.[69]

## III. CONCLUSION

For the foregoing reasons, I conclude that FhG is subject to this Court's jurisdiction, but iBio's claims are barred under the doctrine of laches. The Motion to Dismiss is GRANTED.

**IT IS SO ORDERED**.

---

[68] *Dean Witter*, 1998 WL 442456, at *7 (emphasis omitted).

[69] Because I conclude that iBio's claims are barred under the doctrine of laches, I need not address FhG's argument that iBio failed to state any claims upon which relief can be granted.